## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAROLYN SINGH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | C.A. No. 1:03CV01681 |
| | ) | (RCL) |
| THE GEORGE WASHINGTON | ) | |
| UNIVERSITY, *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS' CONSOLIDATED REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION AND OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION

I.  **Introduction**

The University, Dean Williams, and Associate Dean Goldberg have moved for entry of a judgment in their favor as to Plaintiff's Complaint. Likewise, Associate Dean Goldberg has moved for entry of a judgment in her favor as to her Counterclaim.

Plaintiff has not opposed the latter Motion. Accordingly, under Local Rule 7(b), the Court may treat it as conceded.

Plaintiff has responded to the University, Dean Williams and Associate Dean Goldberg's Motion as to the Complaint. But she does not dispute that Dean Williams and Associate Dean Goldberg are not proper ADA defendants.

Nor does Plaintiff dispute that she performed poorly in medical school. Moreover, she concedes that she told no one at the University that she has a disability until after (1) she had amassed her poor academic record; (2) the MSEC had unanimously recommended her dismissal; and (3) Dean Williams had notified her that he had "decided

to accept the MSEC's recommendation for dismissal, and would not accept any additional evidence." Plaintiff's Statement 4.[1]

Still, Plaintiff contends that the Court should deny Defendants' Motion and enter a judgment in her favor as to the Complaint because (1) her poor performance results from her alleged impairments; and (2) Dean Williams elected not to rescind her dismissal once he learned about them.

Plaintiff's contentions, however, are meritless.

## II.    Facts[2]

### A.    Plaintiff's Academic Record Before Entering Medical School

Plaintiff compiled a commendable record of academic success before entering medical school.

She began her schooling in Guyana, where she was born. Reply/Opp. Exhibit 1 [Plaintiff Tr. 66, L. 1 - Tr. 67, L.2; Tr. 68, L. 21 Tr. 69, L. 3].

Plaintiff came to the United States when she was 13. Reply/Opp. Exhibit 1 [Plaintiff Tr. 71, L. 8-10]; S.J. Exhibit 6 [Newman Tr. Exhibit 6 (Newman Report), 1-2]. And, based upon her performance on a placement test, she skipped two levels and entered high school as a 10th grader. Reply/Opp Exhibit 1 [Plaintiff Tr. 78, L. 18 – Tr. 79, L. 17].

Plaintiff was an academically gifted student. She attended James Madison High

---

[1]    Citations to Plaintiff's Statement of Material Fact or Disputed Facts Interpreted Favorably to Defendants as to Which No Genuine Issue Exists are Denominated "Plaintiff's Statement ___."

[2]    Defendants submit this further factual statement to address matters that Plaintiff raised in her Summary Judgment Motion. To the extent that Defendants rely upon Plaintiff's rendition of the facts, they do so only for the purposes of the pending dispositive motions.

School, in New York City, where she took courses and participated in programs catering to such individuals.  Reply/Opp. Exhibit 1 [Plaintiff Tr. 72, L. 18 – Tr. 75, L. 7; Plaintiff Tr. 77, L. 8-12].

Plaintiff did very well academically, including in several honors and advanced placement courses.  Reply/Opp. Exhibit 1 [Plaintiff Tr. 72, L. 3-8; Plaintiff Tr. 73, L. 12- Tr. 75, L. 7; Plaintiff Tr. 82, L. 16 - Tr. 84, L. 13; Plaintiff's Tr. Exhibit 5 (James Madison High School Transcript)].  Throughout high school she was, together with the nation's most gifted students, a National Honor Society member.  Reply/Opp. Exhibit 1 [Plaintiff Tr. 77, L. 13 - Tr. 78, L. 17].  She graduated in the top 4% of her class -- 19 out of 471 students -- with a 92.73 cumulative grade point average.  Reply/Opp. Exhibit 1 [Plaintiff Tr. 81, L. 20 - Tr. 82, L. 6; Plaintiff Tr. Exhibit 5 (James Madison High School Transcript].  She received departmental awards for her achievement in French and two other subjects.  Reply/Opp. Exhibit 1 [Plaintiff Tr. 84, L. 14 - Tr. 85, L. 6].  And she achieved those accomplishments without accommodations.  Reply/Opp. Exhibit 1 [Plaintiff Tr. 80, L. 5 - 11].

Plaintiff took the Scholastic Aptitude Test, again without accommodations.  Her scores were 550 verbal and 760 mathematics, placing her in the average to above average range.  Reply/Opp. Exhibit 1 [Plaintiff Tr. 88, L. 8 - Tr. 89, L. 6]; Reply/Opp. Exhibit 5 [Newman Tr. 52, L. 12 – Tr. 53, L. 13]; S.J. Exhibit 6 [Newman Tr. Exhibit 6 (Newman Report), 2].

After high school, Plaintiff attended New York University.  Once more, she was an honors student.  This time in the University's Gallatin Metropolitan Scholars Circle.  Reply/Opp. Exhibit 1 [Plaintiff Tr. 91, L. 9 - 23; Plaintiff Tr. 95, L. 21 - Tr. 96, L. 14;

Plaintiff Tr. Exhibit 6 (New York University Transcript)]. Again, she did very well, graduating with a 3.30 cumulative grade point average. Plaintiff's Statement 1. Also, as before, she achieved these accomplishments without accommodations. Reply/Opp. Exhibit 1 [Plaintiff Tr. 99, L. 19 – Tr. 100, L. 7].

## III.    Argument

### A.    Defendants are Entitled to a Judgment in Their Favor as to Plaintiff's Complaint

#### 1.    The Standard for Granting Summary Judgment

Once the party moving for summary judgment has demonstrated that there are no genuine issues of material fact, to avoid summary judgment the opposing party must introduce substantial evidence "showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e). The opposing party must do more than simply show that there is a metaphysical doubt as to material facts. *Matshushita*, 475 U.S. at 586. Rather, she must come forward with proof that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243 (1986).

Such evidence must consist of "more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial." *Walker v. Dalton,* 94 F. Supp.2d 8, 10 (D.D.C. 2000). If the evidence is "'merely colorable' or 'not significantly probative,' summary judgment may be granted." *Id.*

Both in opposing Defendants' Summary Judgment Motion and pressing her own Motion, Plaintiff utterly has failed to carry her burden.

2.      **Plaintiff's ADA Claims are Meritless**

    a.      **Plaintiff has Failed to Prove that She has an ADA Disability**

To prevail under the ADA, Plaintiff must prove that she is "disabled." That is, that she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(2). Courts must interpret these terms "strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197 (2002).

Plaintiff contends that she (1) has impairments -- dyslexia, a mild disorder of processing speed, and a phonological disorder; that (2) impede her ability to learn, which she describes as a major life activity. Plaintiff's Brief 5.[3] But, even assuming, *arguendo,* that she is correct, Plaintiff's ADA claim must fail because she has introduced no evidence that her purported impairments "substantially limit" her ability to learn.

To have an ADA disability, Plaintiff's impairments must substantially limit her ability to learn "as compared to the average person in the general population." *Wong v. Regents of Univ. of Cal.,* ____ F.3d ____, 2004 WL 1837752, No. 01-17432 (9th Cir. Aug. 18, 2004) ("The relevant question for determining whether [an individual] is 'disabled' is 'whether his impairment substantially limits his ability to learn as a whole, for purposes of daily living, *as compared to most people.*'") (emphasis added); *Palotai v. Univ. of Md.,* 38 Fed. Appx. 946, 955 (4th Cir. 2002) ("To the extent that Palotai claims that his learning disabilities substantially limit the major activity of learning, Palotai must show that his impairment significantly restricts his ability to learn. In evaluating this

---

[3]      Citations to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment against Defendants George Washington University and John Williams are denominated. "Plaintiff's Brief ___."

claim, we must consider whether Palotai is unable to learn *in comparison to the average person in the general population.*") (emphasis added); *Betts v. Rector and Visitors of the Univ. of Va.*, 18 Fed. Appx. 114, 118 (4th Cir. 2001) ("[I]n order to establish a disability under § 12102(2)(A), Betts must prove that 'his learning disorder restricts his ability to learn *in comparison to the general population.*'") (citations omitted)(emphasis added); *Gonzales v. Nat'l. Bd. of Med. Exam'rs*, 225 F.3d 620, 626 (6th Cir. 2000) ("'[S]ubstantially limits' is defined in terms of a *general population*") (emphasis added); *Price v. The Nat'l. Bd. of Med. Exam'rs*, 966 F. Supp. 419, 427 (S.D. W.Va. 1997) ("[I]n order for an individual to establish that he or she is 'substantially limited' in a major life activity, that person must show a limitation in their ability to perform a life function *as compared with most people.*") (emphasis added). Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 28 C.F.R. § 36 App. B (2004) ("A person is considered an individual with a disability . . . when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed *in comparison to most people.*") (emphasis added).

Here, Plaintiff has pointed to *no* evidence comparing her ability to learn to that of an average person in the general population. Rather, she focuses entirely on an exceedingly more narrow group of comparators: people of "similar age and education level." Plaintiff's Brief 6. Under the ADA, however, that comparison is completely inapposite.

Moreover, the undisputed evidence establishes that, when compared to the average person in the general population, Plaintiff's ability to learn is superior. She did

very well in high school, in a curriculum designed for academically gifted students. She
was a long-time member of the National Honor Society. She did well on the SATs. She
did very well as an honor student at a prestigious university. And she achieved those
accomplishments without accommodations. *See, supra*, pp. 2–4.

      Plaintiff's record of academic success before medical school dooms her ADA
claim. *See Palotai*, 38 Fed. Appx. at 955 (individual's record of academic success
undermines contention that his ability to learn is substantially limited); *Gonzalez*, 225
F.3d at 629-630 (same); *Betts*, 18 Fed Appx. at 118 ("Although the record shows that
Betts has a learning impairment, his impairment does not substantially limit his ability to
learn in comparison to the general population. Betts has a history of academic
achievement, and his learning abilities are comparable to the general population.");
*Spychalsky v. Sullivan*, No. CV010958DRHETB, 2003 WL 22071602 (E.D.N.Y. Aug.
29, 2003) (individual who graduated from high school, from a prestigious undergraduate
university and from highly regarded law school not substantially limited in his ability to
learn when compared to most people); *Price*, 966 F. Supp. at 427 (individual's record of
academic success undermines contention that his ability to learn is substantially limited).

      Plaintiff cannot save her claim by contending that her alleged impairments
substantially interfere with her ability to learn medicine. Plaintiff's Brief 5. To the
contrary, succeeding in medical school is *not* a major life activity. *McGuinness v. Univ.
of New Mexico*, 170 F.3d 974, 979 (10th Cir. 1998) ("For the purposes of the ADA,
inability to pursue one career, such as medicine, does not constitute a severe impact on an
individual's life."); *Betts v. Rector and Visitors of Univ. of Va.*, 113 F. Supp. 2d 970, 976
(W.D. Va. 2000), *rev'd on other grounds*, 18 Fed. Appx. 114 (4th Cir. 2001) ("Although

learning is a 'major life activity,' attending medical school is not."); *Pacella v. Tufts Univ. Sch. of Dental Med.*, 66 F. Supp. 2d 234, 239 (D. Mass. 1999) ("Even if Pacella's impediments substantially limited his ability to attend dental school, 'an impairment that interferes with an individual's ability to perform a particular function, but does not significantly decrease that individual's ability to obtain a satisfactory education otherwise does not substantially limit the major life activity of learning.' Moreover, the 'inability to pursue one career, such as [dentistry], does not constitute a severe impact on an individual's life'") (citations omitted).

Nor can Plaintiff save her claim by contending that her alleged impairments hamper her ability to achieve her academic potential. Plaintiff's Brief 6. *Marlon v. W. New England Coll.*, No. 01 - 12199DPW, 2003 WL 22914304 * 8 (D. Mass. Dec. 9, 2003) ("A showing that [the plaintiff's] learning disability may have impaired her ability to achieve a score reflective of her ability on the final exams is much too narrow to meet the burden of demonstrating a substantial limitation in the major life activity of learning."). Indeed, to hold otherwise would compel the conclusion that *every* underachiever is disabled as a matter of law. Manifestly, that is not a result that the ADA contemplates. *See Williams*, 534 U.S. at 197-98.

In sum, Plaintiff has failed to prove that her purported impairments substantially limit her ability to learn. Rather, the evidence establishes that, as compared to the average person in the general population, her ability to learn is superior.

Thus, the conclusion is ineluctable that Plaintiff does not have an ADA disability. Accordingly, the Court should enter a judgment in Defendants' favor as to the Complaint.

*See Rivera-Garcia v. Sistema Univ. Ana G. Mendez*, No. 01-1002, 2004 WL 1772961 * 6 (D. P.R. July 30, 2004).[4]

**b.    The University Dismissed Plaintiff for Legitimate and Good Faith Reasons**

Because the University dismissed her for legitimate and good faith reasons, Plaintiff's discriminatory dismissal claim would remain meritless even assuming, *arguendo*, that she is disabled.

On that score, Plaintiff does not dispute that she performed poorly in medical school. Defendants' Brief 5–10. Neither does she dispute that the University elected to dismiss her based upon her poor academic record. Defendants' Brief 5–12.[5] Nor does she dispute that Dean Williams, who made the dismissal decision, knew nothing about Plaintiff's alleged disability at the time and that he treated her the same as he treated similarly situated nondisabled students. Defendants' Brief 5–12.

Plaintiff contends, however, that she is entitled to relief because her poor academic performance, which led to her dismissal, results from her alleged impairments. She is wrong.

---

[4]        Holding:

> Given Plaintiff's failure to provide evidence that Rivera's condition has substantially limited his capacity to walk, this Court cannot find that Rivera is disabled within the meaning of the ADA. The inquiry ends here. The Court need not consider [the university's] failure to reasonably accommodate Rivera nor the possibility that his condition played a role in his termination because he has not demonstrated evidence of a disability.

[5]        As numerous courts have made clear, an educational institution's academic decisions are entitled to deference, even when challenged under the federal disability discrimination law. *See, e.g., Ferrell,* 1999 WL at *6; *Powell v. National Board of Medical Examiners,* 364 F.3d 79, 88 (2d Cir. 2004); *Wong v. The Regents of the Univ. of California,* 192 F.3d 807, 817 (9th Cir. 1999); *Kaltenberger v. Ohio College of Podiatric Medicine,* 162 F.3d 432, 437 (6th Cir. 1998); *Falcone,* 2003 WL 22076604, at *4; *Ellis v. Moorehouse School of Medicine,* 925 F. Supp. 1529, 1541-1543 (N.D. Ga. 1996).

The District of Minnesota's decision in *Falcone v. Univ. of Minn.,* No. 01-1181 JRTSRN, 2003 WL 22076604 (D. Minn. Sept. 3, 2003), is instructive.

Falcone was a medical school student at the University of Minnesota. He performed poorly due to his unaccommodated disabilities. And the University dismissed him for academic reasons.

Falcone sued under Section 504 of the Rehabilitation Act.[6] He contended that the University's failure to accommodate his disabilities impeded his academic progress. Therefore, according to Falcone, his dismissal was a proxy for disability discrimination.

The Court, however, disagreed. And it unhesitantly granted the University's summary judgment motion.

> The question is not whether Falcone might convince this Court, or a jury, that he might eventually be able to pass his clinical course. . .. It is whether the University discriminated against him because of his disability -- that is, did the University dismiss him even though it would have graduated a student whose academic performance was as poor but whose difficulties did not stem from a disability. . .. 'Just as Title VII of the Civil Rights Act of 1964 ensures only equal treatment and not correct decisions, so the Rehabilitation Act requires only a stereotype-free assessment of the person's abilities and prospects rather than a correct decision. . ..' Because the Court finds that the University dismissed Falcone due to his inability to synthesize information, as evidenced by his medical school record in its entirety, no rational fact-finder could find that Falcone was dismissed solely because of his disability, and the University is entitled to summary judgment.

---

[6]    Section 504 of the Rehabilitation Act provides as follows:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance.

29 U.S.C. § 794.

Rehabilitation Act cases are persuasive authority in ADA suits. *See, e.g., Allison v. Dept. of Corrections,* 94 F.3d 494, 497 (8th Cir. 1996).

*Id. a*t *8 (citations omitted).[7]

The result in this case should no be different.  The undisputed evidence
establishes that (1) the University dismissed Plaintiff because she performed poorly;
(2) Dean Williams, who made the dismissal decision, knew nothing about her alleged
disability when he told Plaintiff, on February 11, 2003, that he had "decided to accept the
MSEC's recommendation for dismissal, and would not accept any additional evidence;"
and (3) he treated Plaintiff the same as he treated similarly situated students with no
disability.  Plainly, no rational fact-finder could conclude that the University dismissed
Plaintiff because of her purported disability.  Thus, as in *Falcone*, the Court should reject
Plaintiff's discriminatory dismissal claim as a matter of law.

### c.    Plaintiff Was Not Entitled to a Reasonable Accommodation

The Court should reject, as well, Plaintiff's failure-to-accommodate claim.

Plaintiff does not dispute that she requested no accommodation and told no one at
the University that she was disabled until after (1) she had amassed a poor academic
record; (2) the MSEC had unanimously recommended her dismissal based on her record;
and (3) Dean Williams had told her that he had "decided to accept the MSEC's

---

[7]        Cases involving alleged disability discrimination in employment are to the same effect. *See, e.g.,*
*Maddox v. Univ. of Tenn.,* 62 F.3d 843, 848 (6th Cir. 1995) ("Employers subject to the Rehabilitation Act
and the ADA must be permitted to take appropriate action with respect to an employee on account of
egregious or criminal conduct, regardless of whether the employee is disabled."); *West v. Jupiter Island,*
146 F. Supp.2d 1293, 1299 (S.D. Fla. 2000) ("An employee may not 'bootstrap his disease into a line of
causation,' . . . by showing that the misconduct relied on by the employer would not have occurred 'but for'
the disability.") (*quoting Brohm v. JH Properties, Inc.,* 947 F. Supp. 299, 302 (W.D. Ky. 1996)). Contrary
to Plaintiff's contention, Plaintiff's Brief 13, courts assessing education discrimination claims routinely
look to employment discrimination cases for guidance. *See, e.g., Ferrell v. Howard Univ.,* A. 98-1009,
1999 WL 1581759, at *5 (D.D.C. Dec. 2, 1999), *aff'd, without op.,* 254 F.3d 315 (D.C. Cir. 2000);
*Goodwin v. Keuka Coll.,* 929 F. Supp. 90, 93 (W.D.N.Y. 1995).

recommendation for dismissal, and would not accept any additional evidence."
Plaintiff's Statement 4. That decision is entitled to deference.

But Plaintiff contends that she is entitled to relief because Dean Williams refused to reconsider her dismissal after he learned about her purported impairments. Again, she is wrong.

As this Court has admonished in a related context:

> Although it is unfortunate that plaintiff's disability was not diagnosed before she took the [United States Medical Licensing Examination], neither the Rehabilitation Act, nor the ADA, requires a university to reconsider a decision to dismiss a student for failure to pass a licensing examination in the number of times allowed by the school because the student is later diagnosed with a disability.

*Ferrell,* 1999 WL 1581759 at *6. *Accord Goodwin,* 929 F. Supp. at 94 (student cannot convert non-discriminatory dismissal decision into a discriminatory dismissal by asking a university to reconsider it).

Plaintiff huffs that although Dean Williams announced the dismissal decision on February 11, 2003, he only memorialized it in writing after he received Dr. Newman's report. Her contention, however, contributes nothing to her case.

Plaintiff's cause of action accrued on February 11, 2003, when, as Plaintiff admits, Dean Williams informed her that he had "decided to accept the MSEC's recommendation for dismissal, and would not accept any additional evidence." *See Delaware State Coll. v. Ricks,* 449 U.S. 250, 258 (1980) ("[T]he only alleged discrimination occurred -- and the filing limitations periods therefore commenced -- at the time the tenure decision was made and communicated to Ricks. That is so even though one of the effects of the denial of tenure -- the eventual loss of a teaching position

12

-- did not occur until later."); *Chardon v. Fernandez,* 454 U.S. 6, 8 (1981)

("[R]espondents were notified, when they received their letters, that a final decision had

been made to terminate their appointments. The fact that they were afforded reasonable

notice cannot extend the period within which suit must be filed."); *Goodwin,* 929 F.

Supp. at 94–95.

It is undisputed that Dean Williams knew nothing about Plaintiff's alleged

impairments at that time. Thus, her failure-to-accommodate claim, like her

discriminatory dismissal claim, must fail as a matter of law. *See Goodwin,* 929 F. Supp.

at 94 – 95.

Plaintiff crows that Dean Williams knew as of February 11th that Plaintiff was

undergoing testing for a learning disability. Plaintiff's Brief 4. Her contention, however,

proves nothing.

To the contrary, as a matter of law, notice to Dean Williams that she was being

tested triggered *no* ADA obligation to accommodate her. *See Kaltenberger*, 162 F.3d at

437 ("That plaintiff told an academic counselor at the College that she thought she might

have adult attention deficit disorder simply does not impose an obligation to offer

accommodations"); *Goodwin*, 929 F. Supp. at 94 (knowledge that student is seeking

learning disability testing triggers no accommodation obligations).

**B.    The Court Should Deny Plaintiff's Summary Judgment Motion**

For the reasons discussed herein, and in Defendants' Memorandum of Points and

Authorities in Support of their Summary Judgment Motion, Plaintiff's Motion for

Summary Judgment fails as a matter of law. Accordingly, the Court should deny it.

## IV.    Conclusion

What a devastating message this Court would send to academia if it allowed Plaintiff's claims to proceed.  Medical schools and other educational institutions would be reluctant to establish and enforce academic standards for fear of being hauled into court.  Medical students and others would learn that effort and achievement are less important than finding a handy excuse.  And the nation's confidence in its healthcare professionals would erode.

For all of the foregoing reasons, and for the reasons set forth in their Memorandum of Points and Authorities in Support of their Summary Judgment Motion, Defendants submit that the Court should enter a judgment in their favor, and against Plaintiff, as to the Complaint.

Likewise, Associate Dean Goldberg submits that the Court should enter a judgment in her favor, and against Plaintiff, as to Associate Dean Goldberg's counterclaim.

Respectfully submitted,

ARENT FOX, PLLC

By: _____

      Henry Morris, Jr. (#375894)
      Savalle C. Sims (#457469)
      Anita D. Khushalani (#485985)
1050 Connecticut Ave, N.W.
Washington, D.C. 20036-5339
(202) 857-6000/Telephone
(202) 857-6395/Facsimile

*Counsel for Defendants*

LDR/124370.2

14