UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
Carolyn Singh,                          )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )          Civil Action No. 03-1681 (RCL)
                                        )
The George Washington University,       )
                                        )
        Defendant.                      )
_____)

## MEMORANDUM & ORDER

Before the Court in this Americans with Disabilities Act ("ADA") case is the motion [40]

of defendant The George Washington University (the "School") for reconsideration of the

Court's March 22, 2005 Memorandum Opinion and Order.   On March 22, 2005, the Court

granted in part and denied in part the parties' cross-motions for summary judgment, and,

pursuant to Federal Rule of Civil Procedure 56(d), determined that plaintiff Carolyn Singh

("Singh") had established two elements of her ADA claim: while the Court could not resolve the

issue of whether Singh was disabled, the Court found that she was "otherwise qualified" and that

she had suffered discrimination.  Singh v. George Wash. U., 368 F. Supp. 2d 58 (D.D.C. 2005).

The School asks the Court to reconsider its determinations that the "second chance

doctrine" does not apply and that Singh's request for accommodation was timely.  In the

alternative, the School seeks certification of these issues to the Court of Appeals for interlocutory

review.

After consideration of defendant's motion for reconsideration, the memorandum in

support thereof, the opposition and reply thereto, and the record in this case, the Court will deny

1

defendant's motion.

I.      RECONSIDERATION

    **A.      Legal Standard**

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not

constitute final judgments in a case.  Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005).

Rule 54(b) provides that:

> any order or other form of decision, however designated, which adjudicates fewer than all
> the claims or the rights and liabilities of fewer than all the parties ... is subject to revision
> at any time before the entry of judgment adjudicating all the claims and the rights and
> liabilities of all the parties.

Fed. R. Civ. P. 54(b).  This Court may permit revision "as justice requires."  Cobell v. Norton,

224 F.R.D. 266, 272 (D.D.C. 2004).  While the phrase, "as justice requires," is somewhat

abstract, it is a shorthand for more concrete considerations.  Id.  Justice may require revision

when the Court has "patently misunderstood a party, has made a decision outside the adversarial

issues presented to the Court by the parties, has made an error not of reasoning but of

apprehension, or where a controlling or significant change in the law or facts [has occurred] since

the submission of the issue to the Court."  Cobell, 224 F.R.D. at 272 (citing Bank of Waunakee

v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990) (internal quotes omitted)).

Errors of apprehension may include a Court's failure to consider "controlling decisions or data . .

that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX

Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995).

    "The district court's discretion to reconsider a non-final ruling is, however, limited by the

law of the case doctrine and 'subject to the caveat that where litigants have once battled for the

court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" In re Ski Train Fire in Kaprun, Austria, on November 11, 2004, 224 F.R.D. 543, 546 (S.D.N.Y. 2004) (quoting Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir.2003)).  The sure and speedy administration of justice requires no less.

### B.     Analysis

The School first seeks reconsideration because it believes the Court does not understand the so-called "second chance doctrine," and misapplied that doctrine in this case.  In the March 22, 2005 Memorandum Opinion and Order, the Court described the second chance doctrine:

> Some courts have admonished that the ADA requires reasonable modifications, but not second chances.  Under this "no second chance" banner, courts have held that for a student or worker who cannot perform satisfactorily even when accommodated and gets terminated as a result, the reversal of the termination decision would not be a reasonable modification.  See, e.g., Bugg-Barber v. Randstad US, L.P., 271 F. Supp. 2d 120, 131 (D.D.C. 2003).  Courts have also held that for a person who cannot control the effects of his or her disability and gets terminated as a result, the reversal of the termination decisions would likewise not be a reasonable modification.  See, e.g., Siefken v. Village of Arlington Heights, 65 F.3d 664 (7th Cir. 1995) (holding that a diabetic police officer was properly terminated when he suffered a diabetic reaction on the job and drove his car erratically and at high speeds through residential areas); accord Hill v. Kansas City Area Transp. Auth., 181 F.3d 891 (8th Cir. 1999).  The second chance doctrine, in so far as it is a doctrine, works to deny already accommodated and at-fault plaintiffs from winning an endless string of new accommodations after each failure.  The doctrine does not apply to plaintiffs who, through no fault of their own, have not yet had a chance to get the modifications they need.  See Dudley v Hannaford Bros. Co., 333 F3d 299 (1st Cir. 2003).

Singh, 368 F. Supp. 2d at 70-71.  The Court did not apply the second chance doctrine to Singh. Id. at 71.  The School argues that the Court misconstrued Hill, Siefken, and Dudley and should have applied the second chance doctrine to bar plaintiff's recovery.

Such an argument is not a valid argument for reconsideration.  First, none of the cases the

school cites are binding precedent in the District of Columbia Circuit.  The Court would be free to disagree with the reasoning contained in any or all of the cited cases.  Second, the School has accused the court with an error of reasoning, not of apprehension: as can be seen from the Court's Memorandum Opinion and Order, the Court considered the cases that the School now cites.  In fact, the parties clashed over the meaning of Hill and Sefken in their summary judgment briefs.  (Def's Brief at 19-20; Pl's Brief & Opp. at 12-13.)  The Court analyzed Hill, Siefken, Dudley and other cases, concluded that the case law applied the second chance doctrine when plaintiffs had already been accommodated or were at fault for mismanaging their disabilities, and found that Singh was neither accommodated nor at fault, and therefore not subject to the doctrine.  The School's attempt to re-litigate this issue will not be countenanced.[1]

 The School next argument for reconsideration is that the Court failed to take into account two Supreme Court opinions it claims are relevant to whether Singh's accommodation request was timely.  The two Supreme Court opinions, Del. State College v. Ricks, 449 U.S. 250 (1980) and Chardon v. Fernandez, 454 U.S. 268 (1981), were brought to the Court's attention in the summary judgment briefs, but did not form a basis for the Court's decision that Singh's request for accommodation was timely.  In these cases, the Supreme Court held that, in a discrimination suit, the statute of limitations runs from the date that the employer makes it certain and communicates to the employee that a future dismissal will take place, not from the date of the future dismissal.

 These cases do not help the School.  First, most facially, both deal with statutes of

---

[1]Even if the Court were to reconsider this matter, the School, in all its briefing, has not met the Court head on: it has not attempted to show how the Court's reading of the case law is impermissible, it only argues that its own reading must be correct.

limitations and pinpointing the precise time when a discrimination action accrues, not with

whether a request for accommodation is timely.  Second, and more important, these cases do not

cause the Court to second-guess its determination that the School's dismissal decision must have

come in writing and therefore did not occur until March 5, 2003 – after the School became aware

of Singh's diagnosis and accommodation needs.  See Signh, 368 F. Supp. 2d. at 70.   By the

School's regulations, not until March 5, 2003 was the decision to dismiss Singh final.

Finally, the School submitted a supplement to its motion for reconsideration.  It attached

a district court opinion from the Southern District of Ohio dated of June 3, 2005.  See Brown v.

U. of Cincinnati, No. 04-164, 2005 WL 1324885 (S.D. Ohio June 3, 2005).  That opinion granted

summary judgment to a medical school and against a student with an ADA claim.  The student in

Brown, like Singh, learned of his disability in the midst of his school's consideration of his

dismissal.  The Brown court, without citing this Court's opinion or other law on the matter, held

that a student's accommodation request was untimely because it was unreasonable for the student

to withhold his disability from the school until he had failed another course, the 2001 OB/GYN

course, and had already been recommended for dismissal by one of the school's disciplinary

bodies.  Id. at *14.

This Court finds Brown to be poorly reasoned on the one hand and non-binding on the

other.  First, the Brown court neglects, in its analysis, to mention its earlier factual finding that

the student was diagnosed with his disorder on February 15, 2002, which is after plaintiff had

failed the 2001 OB/GYN course and after he had been recommended for dismissal on January

28, 2002.  How it could be reasonable – and a prerequisite to suit – for a student to request

accommodations for an undiagnosed disorder is beyond this Court.  Second, the existence of the

Brown decision does not compel this Court to reach a different result on the issue of whether

Singh timely requested an accommodation.  District courts, and even circuit courts, are free to

disagree as they seek to apply to the law and to reach just results in their cases.  Our lower federal

courts, as the various states are laboratories for new policies, are the laboratories for the law as it

develops in response to particular controversies.  A disagreement between coequal courts in

separate districts is no grounds for reconsideration. [Certainly the Brown court did not consider

the ruling of this Court in this case.]

      For all these reasons, reconsideration will be denied.  Having denied reconsideration, the

Court turns to the School's request for interlocutory review.


II.     INTERLOCUTORY REVIEW

     **A.**     **Legal Standard**

     When a district judge, in making in a civil action an order not otherwise appealable under
     this section, shall be of the opinion that such order involves a controlling question of law
     as to which there is substantial ground for difference of opinion and that an immediate
     appeal from the order may materially advance the ultimate termination of the litigation,
     he shall so state in writing in such order.

28 U.S.C. 1292(b).  "The party seeking interlocutory review has the burden of persuading the

Court that the circumstances justify a departure from the basic policy of postponing appellate

review until after the entry of a final judgment."  APCC Services, Inc. v. Sprint Communications

Co., 297 F. Supp. 2d 90, 95 (D.D.C. 2003) (internal quotes ommitted).

     **B.**     **Analysis**

The School seeks certification of two questions:

1)     Whether the second chance doctrine applies to plaintiffs who have not been
        "already accommodated;" and

2)      Whether a student's request for accommodation is timely if made after her school
tells her that she is dismissed.

(Def's Brief at 6.)  Upon consideration of the first question, the School would want the Court of

Appeals to apply the second chance doctrine to bar Singh's claim, thus requiring dismissal of her

case.  Upon consideration of the second question, the School would want the Court of Appeals to

find that allegedly analogous Supreme Court precedent compels a finding that Singh's

accommodation request was untimely, again requiring dismissal of her claim.[2] Id. at 7.

Certification is not appropriate here.  While these questions, as phrased,  might each be a

"controlling question of law,"there does not exist, on either, substantial ground for difference of

opinion nor would an interlocutory appeal on these questions materially advance the ultimate

termination of the litigation.

### 1.      Substantial Ground for Difference of Opinion

As to the question concerning the second chance doctrine, the School claims substantial

ground for difference of opinion by citing to the same Court of Appeals decisions – Hill and

Siefken – that it cited in support of its motion for reconsideration.  As discussed previously, the

Court does not see these cases as conflicting authority, but as ultimately supportive of the result

the Court reached.  The Court has not distinguished these cases, but placed the current

controversy within their framework.  At bottom, then, the School cannot claim that this Court is

---

[2]The Court notes that the School has not asked this Court to certify the question of when
dismissal took place.  This Court found that dismissal took place on March 5, 2003 when the
School's Dean sent to Singh a written letter to that effect.  Strangely, the School ignores that the
Court reached this conclusion and now seeks to argue that, assuming dismissal occurred at the
February 11 meeting between Singh and the School's Dean, Singh's accommodation request
must be untimely.  The School has set up its own question for appeal that makes little logical
sense in the context of the Court's March 22, 2005 Memorandum Opinion and Order.

in irreconcilable conflict with other courts on the second chance issue, but can only claim to

dislike this Court's reading of case law.  "A mere claim that the district court's ruling was

incorrect does not demonstrate a substantial ground for difference of opinion."  Wausau Business

Int'l Co. v. Turner Construction Co., 151 F. Supp. 2d 488, 491 (S.D.N.Y 2001).

As to the question regarding timeliness, the Court similarly does not see its ruling in

conflict with the Ricks and Chardon decisions of the Supreme Court.

> 2.      *Materially Advance the Ultimate Termination of the Litigation*

At this point, discovery is complete and the parties' cross-motions for summary judgment

have been ruled upon.  The March 22, 2005 Memorandum Opinion and Order narrowed the

issues for trial such that the remaining issues are that of Singh's disability and any remedy.

Despite the School's predictions of a protracted battle of the experts, the Court expects that trial

of this matter would not occupy more than several days of the Court's time.  After that trial, the

School and Singh would be free to appeal from a final judgment and benefit from consolidating

all appealable issues into one appeal.  With this litigation poised for a relatively short, limited

trial, it would not materially advance the termination of the litigation to authorize a piecemeal

appeal See Brown v. Pro Football, Inc., 812 F. Supp. 237, 239 (D.D.C.,1992) ("Given that the

trial on damages is imminent, it is evident that it would not expedite the ultimate termination of

this litigation to delay the proceedings for an interlocutory appeal."); Aktiebolag v. Waukesha

Cutting Tools, Inc., 640 F. Supp. 1139, 1141 (E.D. Wis. 1986) (noting that with a trial estimated

at one week scheduled for two months out, "an immediate piecemeal appeal from the court's

interlocutory order may actually impede rather than expedite, the conclusion of the entire case").

The Court recognizes that this case has raised a number of important and controversial

issues in ADA law – some of which are not even the subject of the School's questions for certification .  The Court of Appeals may well play a role in reviewing this Court's decisions, but not at this time.  The School's request for interlocutory appeal will be denied.


III.     ORDER

Therefore, it is hereby

ORDERED that defendant's motion [40] for reconsideration is DENIED and it is further

ORDERED that defendant's alternative request for interlocutory certification to the Court of Appeals is DENIED, and it is further

ORDERED that the clerk shall set a prompt scheduling conference to set dates for pretrial and trial.

SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, August 23, 2005.